# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**THOMAS JACK MADRID,**

      **Plaintiff,**

**vs.**                           **No. CIV 00-1780 LH/LCS**

**LAWRENCE TAFOYA, WARDEN,**
**PATRICIA MADRID, ATTORNEY**
**GENERAL FOR THE STATE**
**OF NEW MEXICO**

      **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss, filed April 12, 2001 (*Doc. 12*).  The Court, having considered the submissions of the parties, record, relevant law, and being otherwise fully informed makes the following proposed findings:

## PROPOSED FINDINGS

1.     This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, filed December 18, 2000.[1] Defendants filed their Motion to Dismiss on April 12, 2001. (*Doc. 12*). As grounds for federal habeas review, Madrid asserts that he was denied the right to

---

[1]    Because he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), its standards apply to this case. *See e.g., Paxton v. Ward*, 199 F. 3d 1197, 1204 (10th Cir. 1999). All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary. *See e. g., Trice v. Ward*, 196 F. 3d 1151, 1159 (10th Cir. 1999), *cert. denied*, 121 S. Ct. 93 (2000); Rule 8(a), Rules Governing Habeas Corpus Under Section 2254.

confront a state witness and that he was denied a fast and speedy trial for his habitual offender proceeding. (*Doc. 1*).

2.      On September 26, 1997, Madrid was convicted of forgery pursuant to a guilty verdict in the Second Judicial District Court in the County of Bernalillo. (Ex. A to Answer). He was sentenced for a term of three years imprisonment pursuant to a Judgment, Sentence, and Commitment filed January 26, 1998. (Ex. A to Answer). The Plaintiff is currently incarcerated in the Southern New Mexico Corrections Facility and is proceeding pro se.

3.      On June 17, 1998, Madrid, via counsel, filed his Appeal from the Second Judicial District Court Bernalillo County, New Mexico. (Ex. E. to Answer).[2] In that appeal, the Plaintiff raised six issues. (Ex. E. to Answer). On July 8, 1998, the Court of Appeals affirmed Madrid's conviction in a Memorandum Opinion. (Ex. F. to Answer). Madrid subsequently filed a Petition for Writ of Certiorari on July 28, 1998, which was denied one month later. (Exs. G and H).

4.      In March of 1998, a supplemental information was filed asserting that Madrid was a four time habitual offender. On February 25, 1999, after a trial on the merits, the court found Madrid to be an habitual offender with three prior felonies. (Ex. I to Answer).[3] On April 30, 1999, the state district court filed its First Amended Judgment, Sentence and Commitment. (Ex. I to Answer). In that Judgment, the judge found and adjudged Madrid to be an habitual offender and amended his sentence by adding the term of eleven years. (Ex. I to Answer).

5.      Madrid filed a second appeal with the New Mexico Court of Appeals on

---

[2]      Initially, the Plaintiff filed a Docketing Statement on March 27, 1998 outlining the issues he wished to take on appeal. (Ex. C. to Answer). The New Mexico Court of Appeals filed its Calendar Notice proposing summary affirmance on May 14, 1998. (Ex. D. to Answer).

[3]      The state received two extensions from the court before the trial on Madrid's supplemental information issue took place in February, 1999.

2

September 16, 1998. (Ex. M. to Answer). In that appeal, the Plaintiff raised essentially two issues: his rights to a speedy trial and his right to confront state witnesses were denied at his habitual offender proceeding. (Ex. M to Answer). The Court of Appeals affirmed the trial court's amended judgment and sentence in a Memorandum Opinion filed December 6, 1999. (Ex. P to Answer). Madrid subsequently filed a Petition for Writ of Certiorari on December 21, 1999, which was denied by the New Mexico Supreme Court one month later. (Exs. Q and R to Answer).

6.       On December 18, 2000, the Plaintiff filed an Application for Writ of Habeas Corpus in federal court pursuant to 28 U.S.C. §2254. (*Doc. 1*). In that petition, the Plaintiff raises two claims. The Plaintiff's first claim alleges he was denied his right to speedy trial for the habitual offender proceeding. The second claim asserts that Madrid was denied the right to confront witnesses at his habitual offender proceeding.

Right to Speedy Trial

7.     The Plaintiff first argues that his right to a speedy trial was violated.[4] Specifically, he argues he was denied the right to a speedy trial because the state did not try him as a habitual offender until approximately two years after he was charged with his underlying felony. In the New Mexico Court of Appeals' Memorandum and Opinion, the court stated that "the Defendant has not adequately shown that his speedy trial claim was either preserved or viable." (Ex. P to Answer). The Court of Appeals subsequently denied the Plaintiff's Motion to Amend his Docketing Statement to include a speedy trial claim for failure to preserve at the trial level. I find that if the Plaintiff's trial level attorney had filed a response to the state's motions to continue the

---

[4]       Madrid failed to raise this issue in his initial Docketing Statement to the Court of Appeals. Therefore, this issue was first brought in the Plaintiff's Memorandum in Opposition to Proposed Summary Affirmance as a Motion to Amend the Docketing Statement. (Ex. M to Answer).

habitual offender proceeding, the New Mexico Court of Appeals would have decided this issue on the merits. Therefore, I interpret the Plaintiff's right to a speedy trial claim as an ineffective assistance of counsel claim.[5]

8.     In order to establish that he received ineffective assistance in violation of the Sixth Amendment, a defendant must show that: (1) his counsel's performance was constitutionally deficient, and (2) he was prejudiced by such deficient performance. *See Strickland v. Washington*, 466 U. S. 668, 687 (1984 ). To show his counsel was constitutionally deficient, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness. *See Id.* at 688. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See id.* at 690. In order to demonstrate prejudice, a defendant must show that there is a reasonable probability that, but for counsels unprofessional errors, the result of the proceeding would have been different. *See id.* 694.

9.     The Strickland inquiry is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F. 3d 1362, 1367 (7th Cir. 1997). A fair assessment of attorney performance requires a reviewing court "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U. S. at 689. Moreover, ineffective assistance of counsel claims may be resolved

---

[5]     Although the Plaintiff has not presented this issue in a state habeas corpus petition, federal courts may deny the claim on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. §2254(b)(2).

on either performance or prejudice grounds alone. *See Hatch v. Oklahoma*, 58 F. 3d 1447, 1457 (10th Cir. 1995).

10.     Assuming counsel's performance was constitutionally deficient in failing to respond to the state's motion, the Plaintiff must also prove he was prejudiced by his counsel's deficient performance. Madrid's claim revolves around his trial counsel's failure to file responses to the state's motions to continue the habitual offender proceeding. The Plaintiff was originally indicted on the underlying felony charge on March 18, 1997. He was convicted for the offense of forgery on September 26, 1997 and was sentenced to three years imprisonment on January 26, 1998. The state filed a supplemental information on March 18, 1998 and held an habitual offender proceeding on February 26, 1999. Madrid was found to be an habitual offender with three prior felonies and thus sentenced to eleven additional years of imprisonment. (Ex. I to Answer). The underlying issue for this claim is whether Madrid was prejudiced by the fact his habitual offender proceeding took place approximately twenty-three months after he was indicted.

11.     The Plaintiff argued in his appeal that his speedy trial right attached when the original indictment against him was filed on March 18, 1997. He further argued that he was presumptively prejudiced by the state's failure to hold the habitual offender proceeding before February of 1999, twenty-three months after the date of the indictment.

12.     The Sixth Amendment provides: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . " U.S. CONST. amend. VI. "Events which trigger Sixth Amendment protection are the formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . ." *United States v. Marion,* 404 U.S. at 320, 92 S.Ct. at 2187. New Mexico Rule of Criminal Procedure 5-604 establishes a six month

time limit for trials in criminal cases, including habitual offender proceedings. N.M. R. CRIM.

PRO. 5-604. The Rule states that "an habitual criminal proceeding shall be commenced six (6)

months after whichever of the following events occurs latest:." *Id*. The rule also allows extensions

of time not to exceed three months. *Id*.

13.     In determining whether the Plaintiff's Sixth Amendment right to a speedy trial was

violated with respect to his separate habitual offender proceeding, I look to a Tenth Circuit

decision in *Perez v. Sullivan*, 793 F.2d 249 (10th Cir. 1986).[6] In that case, the Court held that the

defendant was not deprived of his right to a speedy trial with respect to a habitual offender

proceeding. The court further stated that

> [i]t is not necessary for us to decide whether the habitual offender charge in this case was
> a separate proceeding for purposes of the Sixth Amendment speedy trial guarantee. If it
> were a separate proceeding, defendant's rights did not attach until the supplemental
> information was actually filed on April 2, 1982, unless his continued imprisonment in the
> county jail, instead of the penitentiary, amounted to an arrest on the habitual offender
> charge. We hold that it did not. The restraints referred to in *Marion* [404 U.S. 307, 325,
> 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971)] are restraints on liberty, not restraints on a
> choice of prisons. Defendant had no liberty to be restrained. He was in jail because of his
> arrest and conviction on the burglary charges, not on the habitual criminal charge. There
> was no prospect that his liberty during the time periods in question depended upon the
> outcome of an habitual offender proceeding. It is evident that he would have remained
> incarcerated for the period of time in question whether or not that proceeding had been
> brought. *Perez*, 793 F.2d at 258.

14.     First, the *Perez* court identifies the event which triggers the tolling of time for

a habitual offender proceeding for purposes of a speedy trial claim is when the supplemental

information is filed, not when the defendant was originally indicted. *See State v. Santillanes*, 98

N.M. 448, 649 P.2d 516 (Ct. App. 1982) (holding that Appellant's right to a speedy trial was

triggered by the . . . . filing of the supplemental information.) Time will begin to run from the

---

[6]     This case was on appeal from the District of New Mexico.

indictment only if the habitual offender proceeding is the same proceeding as the original trial. Second, the *Perez* court also clarified that a prisoner who is already imprisoned on the underlying felony charge usually does not have a right to speedy trial with respect to his habitual offender proceeding unless his liberty was dependant on the outcome of that proceeding.[7]

15.    In addition to the *Perez* analysis, the Sixth Amendment right to a speedy trial is designed to minimize the possibility of a lengthy incarceration prior to trial, to reduce the impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. *See United States v. MacDonald*, 456 U. S. 1, 8 (1982). It does not protect against all results that flow from pretrial delays. *See United States v. Loud Hawk*, 474 U.S. 302, 311 (1986).

16.    In this case, I find the dely in holding the habitual offender proceeding did not in fact prejudice the Defendant. The Plaintiff's supplemental information was filed on March 18, 1998 and the habitual offender proceeding was held approximately eleven months later on February 25, 1999. Madrid was already in prison serving his sentence for his underlying forgery conviction. On the date of his habitual offender proceeding, Madrid had approximately two years remaining on that underlying conviction. Although Rule 5-604 states that an habitual offender proceeding shall take place within nine months of the filing of the supplemental information, I find that the eleven month waiting period in this case does not rise to the level of a constitutional violation. The Tenth Circuit has made clear, while interpreting the Sixth Amendment right to a

---

[7]    With respect to other constitutional principles, the New Mexico courts have ruled in a similar fashion. In *March v. State*, 109 N.M. 110, 111, 782 P.2d 82, 83 (1989), the court stated that with respect to double jeopardy principles, once a defendant has completely served his sentence, he has a reasonable expectation of finality in his case and the trial court loses jurisdiction to enhance his sentence. Therefore, further punishment for that crime under any enhancement provision would violate the prohibition on double jeopardy, even if the defendant had notice that the State was planning to prosecute him under the Habitual Offender Act.

speedy trial along with Rule 5-604, that a person who is already imprisoned on an underlying

felony charge does not have a right to speedy trial with respect to his habitual offender proceeding

<u>unless</u> his liberty was dependant on the outcome of that proceeding. *See Perez*, 793 F.2d at 258.

Accordingly, I find that the Plaintiff was not deprived of his right to a speedy trial with respect to

the habitual offender proceeding. Therefore, I find that even if Madrid's trial counsel was deficient

in failing to file responses to the state's motion for continuances, such conduct did not prejudice

the Plaintiff.

Right to Confront Witnesses

17.     The Plaintiff's second claim, right to confront witnesses in violation of the Sixth

Amendment of the Constitution, was also presented on direct appeal. (Ex. M to Answer).

Specifically, Madrid argued that he was denied his right to confront witnesses because fingerprint

cards were improperly admitted into evidence at his habitual offender proceeding. *Id.* The Court

of Appeals stated that "[f]ingerprint cards are self-authenticating under the Rules of Evidence and

do not require additional testimony from the records custodian or other qualified witnesses if they

are supported by signed certifications or bear the seal of the public agency and a signature

purporting to be an attestation." (Ex. P to Answer). The court found that the fingerprint cards in

this case were authenticated by the certification signed by the records custodian of the New

Mexico Department of Public Safety. Thus, the court determined that the fingerprint cards were

properly admitted into evidence.

18.     The requirement that a petitioner seeking relief under 28 U.S.C. § 2254 must

exhaust state remedies is not jurisdictional, but is based on concerns of comity and federalism.

*See Granberry v. Greer*, 481 U.S. 129, 131 (1987); *see also Picard v. Connor*, 404 U.S. 270,

8

275 (1971); *see also Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997).  State courts must be afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's appellate review process," including discretionary appeals to the state supreme court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 1731 (1999). Proper respect for state court convictions require that the prisoner must fairly present these claims to the state courts. *See Demarest*, 130 F.3d at 932. To be a fair presentation of the petitioner's claims, "[t]he prisoner's allegations and supporting evidence must offer the state courts 'a fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (*quoting Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

19.     Federal habeas courts do not sit to correct errors of fact or to re-litigate state court trials. This concept was codified when Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). In effect, the AEDPA increases the deference to be paid by the federal courts to the state courts' factual findings and legal determinations. *See Houchin v. Zavaras*, 107 F. 3d 1465, 1470 (10th Cir. 1997). The Supreme Court recently interpreted the revised standards of review set forth in AEDPA and held, among other things, that under §2254(d)(1), a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. *See Williams v. Taylor*, 120 S.Ct. 1495, 1522 (Apr. 18, 2000). In *Williams*, the Court held that: §2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. A federal habeas court's power to grant a state prisoner's application for a writ of habeas

corpus with respect to claims adjudicated on the merits in state court is limited to circumstances in which one of two conditions is satisfied: "the state-court adjudication resulted in a decision that (1) 'was contrary to clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" *See Williams*, 120 S.Ct. at 1518 (citing 28 U.S.C.A. § 2254(d)(1)).

20.     As stated above, federal habeas courts do not sit to correct errors of fact or to re-litigate state court trials. This issue, as well as the Plaintiff's speedy trial issue, was properly scrutinized by the New Mexico Court of Appeals and decided on its merits. Moreover, the court's decision is not contrary to clearly established Federal law, as determined by the Supreme Court of the United States, nor did it involve an unreasonable application of clearly established Federal law. *See Williams*, 120 S.Ct. at 1518 (citing 28 U.S.C.A. § 2254(d)(1)); *see also Harris*, 489 U. S. at 263. Therefore, I recommend finding this claim should also be dismissed.

## **RECOMMENDED DISPOSITION**

I recommend GRANTING the Defendants' Motion to Dismiss the Petition filed April 12, 2001 (*Doc. 12*) and DISMISSING this action with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of

the proposed findings and recommendations.  If no objections are filed, no appellate review will

be allowed.

_____

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**